UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALISON SCOTT, Individually and on Behalf of All Other Persons Similarly Situated,

              Plaintiffs,

      -against-

SSP AMERICA, INC.,

              Defendant.

Index No.  09 Civ. 04399 (RRM) (VVP)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LITTLER MENDELSON
A Professional Corporation
Andrew P. Marks
Sara Danielle Sheinkin
900 Third Avenue
New York, New York 10022
212.583.9600
Attorneys for Defendant

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.   SUMMARY JUDGMENT IS APPROPRIATE IN EXEMPTION CASES .............. 2
II.  SSP HAS ESTABLISHED THE ELEMENTS OF ITS AFFIRMATIVE
     DEFENSE .................................................................................................................. 3
     A.   Scott's Primary Duty was Management ........................................................ 4
          1.   Scott Performed Management Functions ............................................ 4
          2.   Management was Scott's Primary Responsibility .............................. 5
          3.   Supervision of Scott does not Negate the Exemption ......................... 7
     B.   Scott Regularly Exercised Discretionary Power ............................................ 8
     C.   Scott's Recommendations were Given Particular Weight ............................. 9
III. CONCLUSION ....................................................................................................... 10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Buechler v. Davco Restaurants, Inc.*
 2009 U.S. Dist. LEXIS 106607 (D. Md. Nov. 16, 2009) ...................................... 8

*Donovan v. Burger King Corp.*
 675 F.2d 516 (2d Cir. 1982) .................................................................................. 7

*Golden v. Merrill Lynch & Co., Inc.*
 2007 U.S. Dist. LEXIS 90106 (S.D.N.Y. Dec. 6, 2007) ........................................ 3

*Goldstick v. The Hartford, Inc.*
 2002 U.S. Dist. LEXIS 15247 (S.D.N.Y. Aug. 19, 2002) ..................................... 2

*Guinup v. Petr-All Petroleum Corp.*
 2010 U.S. Dist. LEXIS 86280 (N.D.N.Y. Aug. 23, 2010) ..................................... 7

*Hayes v. New York City Dept. of Corrections*
 84 F.3d 614 (2d Cir. 1996) .................................................................................... 1

*Jackson v. Advance Auto Parts*
 362 F. Supp. 2d 1323 (N.D. Ga. 2005) ................................................................. 8

*Jeffreys v. City of N.Y.*
 426 F.3d 549 (2d Cir. 2005) .................................................................................. 5

*Morgan v. Family Dollar Stores, Inc.*
 551 F.3d 1233 (11th Cir. 2008) ............................................................................. 8

*Mullins v. City of New York*
 523 F. Supp. 2d 339 (S.D.N.Y. 2007) ............................................................ 3, 6, 8

*Noble v. 93 Univ. Place Corp.*
 303 F. Supp. 2d 365 (S.D.N.Y. 2003) ................................................................... 2

*Rubery v. Buth-Na-Bodhaige, Inc.*
 470 F. Supp. 2d 273 (W.D.N.Y. Jan. 23, 2007) .................................................... 2

*Torres v. Gristede's Foods NY, Inc.*
 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ..................................... 2

*Zakrzewska v. The New Sch.*
 2009 U.S. Dist. LEXIS 3868 (S.D.N.Y. Jan. 21, 2009) ........................................ 9

**STATUTES**

29 C.F.R. 541.100 ............................................................................................................ 3

29 C.F.R. 541.105 ............................................................................................................ 9

29 C.F.R. 541.202(a) ....................................................................................................... 9

29 C.F.R. 541.700 ............................................................................................................ 6

In its moving papers, SSP America, Inc. demonstrated that it properly classified Alison Scott as a bona fide executive, exempt from the overtime requirements of the Fair Labor Standards Act and New York Labor Law.  In doing so, SSP relied upon admissions made by Scott during her deposition, including her admissions that:  (1) she supervised and managed employees; (2) her most important task for the Company was a management function; (3) having a manager present at the unit was essential to the Company's operations; and (4) although circumstances required her to perform some non-managerial tasks, she would "multi-task" and continue to supervise her staff even while performing manual work.  Scott's admissions are supported by numerous documents she herself prepared, including her resume, contemporaneous emails, employment reviews and disciplinary notices, as well as the sworn statements of her supervisor, co-workers and subordinates.

The Second Circuit has cautioned that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).  In a misguided attempt to avoid that ruling, Scott simply skips the affidavit part and contradicts her testimony in her brief and 56.1 Counterstatement, without including relevant citations to the record.  For example, Scott contends that, when she testified under oath that she multi-tasked by supervising while cleaning, she really meant that she multi-tasked multiple non-exempt tasks, but "rarely, if ever, performed managerial work while multitasking." (56.1 Counterstatement ("CS") ¶ 80.)  Scott offers no sworn affidavit for this ludicrous post-hoc construction.  Nor can it be fairly inferred from the testimony:

> Q.   While you were doing work of cleaning or cooking or cashiering, who was supervising the staff?

>   A. I had to multi task.[1]

(Scott Dep. at 235.[2])

Scott cannot raise factual disputes through distortions of the record. She is wedded to the admissions she made during her deposition. Because those admissions prove that she was properly classified as an exempt executive employee, summary judgment is appropriate.

### I. SUMMARY JUDGMENT IS APPROPRIATE IN EXEMPTION CASES

Unable to avoid the undisputed facts supporting summary judgment in this case, Scott essentially argues that summary judgment is never appropriate in an exemption case because a fact specific inquiry is required. But, as illustrated by the many cases cited in SSP's moving papers, summary judgment *is* available and appropriate where, as here, the plaintiff's primary duty was management and the other elements of the exemption test have been met.

None of the cases cited by Scott present circumstances similar to those here. The plaintiff in *Noble v. 93 Univ. Place Corp.* (Opp. Br. 8) denied that he was hired as a manager, that any employees reported to him, and that he had any supervisory authority. 303 F. Supp. 2d 365, 368, 376 (S.D.N.Y. 2003). Other cases cited by Scott are similarly distinguishable. For instance, the plaintiff in *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273, 277 (W.D.N.Y. Jan. 23, 2007) (Opp Br. 11-12) argued that other lower level, non-exempt employees performed the same "managerial" functions as she did. And the plaintiffs in *Torres v. Gristede's Foods NY, Inc.*, 2006 U.S. Dist. LEXIS 74039, at *33 n.9 (S.D.N.Y. Sept. 29, 2006)[3] (Opp. Br. 15)

---

[1] This is one of many examples in Scott's 56.1 Counterstatement where Scott contradicts her unambiguous deposition testimony. Scott must not be permitted to use argumentative narrative in her Counterstatement to explain away admissions she made during the deposition. *Goldstick v. The Hartford, Inc.*, 2002 U.S. Dist. LEXIS 15247, at *3 (S.D.N.Y. Aug. 19, 2002).

[2] All deposition pages and exhibits referenced herein are attached as exhibits to the Declaration of Sara D. Sheinkin, filed with Defendant's moving papers, or the Second Declaration of Sara D. Sheinkin, filed herewith.

[3] Contrary to Scott's description in her brief, the court in *Torres* addressed a motion for conditional and class certification, not a motion for summary judgment.

submitted extensive testimony that they did not perform management tasks and did not supervise other employees. Scott, in contrast, admitted that: (1) she was hired as a manager (Scott Dep. at 57); (2) she supervised both hourly employees and assistant managers (56.1 CS ¶ 45-46); (3) she exercised various supervisory and managerial authority (Scott Dep. at 9, 105, 109-12, 115, 174-75); (4) she performed many tasks that hourly employees did not (e.g., tasks listed on the manager task list, discipline, setting par value for orders, scheduling, etc.) (Scott Dep. at 105, 109-11, 174-75, 231-32; Ex. K); (5) her job required her to concurrently supervise employees while sometimes performing non-exempt work (Scott Dep. at 235); and (6) the Company's operations would be compromised without the presence of a manager (Scott Dep. at 177-78).

As a matter of law, the undisputed admissions made by Scott concerning the nature, scope and importance of her managerial role at SSP establish that she was a bona fide executive. Accordingly, summary judgment is appropriate. *See, e.g.*, *Golden v. Merrill Lynch & Co., Inc.*, 2007 U.S. Dist. LEXIS 90106 (S.D.N.Y. Dec. 6, 2007) (granting summary judgment where plaintiff admitted at deposition to performing numerous supervisory duties); *Mullins v. City of New York*, 523 F. Supp. 2d 339 (S.D.N.Y. 2007) (granting summary judgment where plaintiffs worked as front line supervisors, even though they spent a majority of their time working alongside their subordinates).

## II. SSP HAS ESTABLISHED THE ELEMENTS OF ITS AFFIRMATIVE DEFENSE

Summary judgment is warranted because SSP has established that Scott's primary duty was management, and her recommendations concerning employees' changes of status were given particular weight. 29 C.F.R. 541.100.[4]

---

[4] Scott does not dispute that she was paid on a salary basis at a rate of not less than $455 per week or that she customarily and regularly directed the work of two or more employees, also required by 29 C.F.R. 541.100.

### A.     Scott's Primary Duty was Management

#### 1.     Scott Performed Management Functions

Scott's deposition testimony and 56.1 Counterstatement are replete with admissions concerning the management functions she performed. For instance, Scott admitted that each SSP unit is a separate business operation, that she "managed" various hourly employees within her units, and that she "supervised Assistant Managers, and delegated work to them." (56.1 CS ¶ 4, 45, 46.) Scott admitted that she issued discipline to hourly employees without supervisory approval, that she suspended employees upon consultation with, or approval from, her supervisor, that she could call employees in to work if she was short staffed, and that she "was very strict about making sure that proper procedures were being followed and that *her employees* were properly performing their jobs." (56.1 CS ¶ 43, 53, 56, 64 (emphasis added).) Scott admitted that she trained, mentored and motivated managers and associates, and had P&L and management responsibilities for several units. (Scott Dep. at 35-37.)

Attempting to dodge these, and other, admissions, Scott argues that having "some" managerial responsibilities is not enough and that the exemption issue constitutes a matter for trial. (Opp. Br. 15.) Notably, not one of the three cases cited by Scott for this argument was a summary judgment decision concerning the executive exemption. Moreover, the list of tasks that Scott claims she did not have, and should be determinative of the motion (Opp. Br. 16-17), is deceptive. Scott did, in fact, perform several of the tasks listed (e.g., implementing discipline, scheduling, adjusting workflow by calling employees in and asking for volunteers to go home). (Scott Dep. at 105, 111, 133, 142, 174-75, 183, 191-92, 232.)   Management must be an employee's primary duty, but an individual need not perform every possible type of managerial function to be a bona fide executive.

### 2. Management was Scott's Primary Responsibility

Scott next argues that, even though she performed management duties, management was not her primary responsibility because she also performed the same tasks as non-exempt employees with whom she worked. (Opp. Br. 13.) Unlike her hourly, union represented subordinates, Scott only performed non-exempt tasks to fill in, when necessary. Scott had the discretion to decide where, when and how to perform such work. (Scott Dep. at 234-35.) Scott also decided when to stop performing non-exempt work and attend to "the other units that [she] had to run." (Scott Dep. at 235.) In addition, Scott remained the supervisor in charge while performing non-exempt work and concurrently performed both exempt and non-exempt duties. (Scott Dep. at 235.)[5]

Scott also argues that management was not her primary duty because she spent almost all of her time performing non-exempt tasks. (Opp. Br. 11-14.) Scott's assertion that she spent 90% of her time performing non-exempt work, which is based on nothing more than her own self-serving conclusory statement, defies credulity when considered in light of her sworn testimony as a whole.[6] Summary judgment is appropriate where no reasonable person would undertake the suspension of disbelief necessary to give credit to the plaintiff's allegations. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 555 (2d Cir. 2005). Not only is Scott's testimony internally inconsistent, it is refuted by the sworn statements of her supervisor, her subordinates and her co-workers, the Collective Bargaining Agreement limiting the number of hours that managers may perform non-

---

[5] Also unlike her subordinates, Scott was eligible to earn bonuses, up to 20% of her salary depending, in part, on her unit's profitability. (Scott Dep. at 244-45; 56.1 CS ¶ 22; Ex. I.)

[6] Moreover, Scott testified that she performed non-exempt work for a majority of her time only for a portion of her employment with SSP. For instance, Scott did not spend a majority of her time performing non-exempt work during the time period she supervised the Avion unit, or while attending out of town training to be brand champion for Panda Express. (Scott Dep. at 82-83, 85, 236-37.)

exempt unit work, and documents prepared by Scott evidencing her use of managerial authority.[7] Scott's argument also disregards authority instructing that time spent performing exempt tasks is not the proper measurement of a person's primary duty. 29 C.F.R. 541.700. Thus, whether Scott spent 10% or 90% of her time performing non-exempt work is not determinative of SSP's motion.

Scott has presented no evidence or authority to suggest that her performance of non-exempt work was her principal value to the Company. Scott admits that it was imperative for the Company to have her, or another manager, present at the unit at all times. (Scott Dep. at 178.) Even if not the most time-consuming duty, the fact that management was Scott's most important and, thus, "primary" duty is illustrated by Scott's own admissions that "not having a manager present would compromise the Company's operations" and that her most important task for SSP was increasing profitability for her units,[8] which she accomplished by performing various managerial tasks. (Scott Dep. at 120-22, 133, 156-57, 168, 178, 231, 251; 56.1 CS ¶ 49.) *See, e.g., Mullins v. City of New York*, 523 F. Supp. 2d 339, 358-59 (S.D.N.Y. 2007) (the nature and relative importance of the additional duties separate and distinct from those that plaintiffs shared with their subordinates indicated that plaintiffs' principal value to defendants was in their service

---

[7] For instance, the manager task list, prepared by Scott, required that, each day, among other things, Scott attend a manager huddle, run a huddle with her employees, check employees for upholding uniform policy, review deliveries from production and storeroom, review emails and red book entries, review a void report, ensure employees clock in and out, check next day staffing levels to ensure all positions are covered, conduct till audits, delegate the maintenance of unit and equipment cleanliness and evaluate merchandising displays. (Scott Dep. at 109-12; Ex. K.) Scott was also required to perform different, additional managerial tasks on each day of the week. For instance, on Saturday, she would do the employee schedule. (*Id.*) On Thursday, she would perform any necessary payroll adjustments and place her storeroom and production order. (*Id.*) It is simply implausible that Scott's daily supervision of her units, including but not limited to these specific tasks, took up less than 10% of her time each day.

[8] During her deposition, Scott was asked, "What was your most important task working at SSP?" She responded, "Increasing profitability." (Scott Dep. at 251.) In her 56.1 Counterstatement, Scott objects to the averment, "Scott understood that, as a manager, her most important task was increasing profitability for her units," as "unduly confusing or prejudicial." (56.1 CS ¶ 27). Scott's admission in her deposition concerning this essential managerial task was undoubtedly prejudicial to her opposition to summary judgment, but there is nothing objectionable about the averment, and Scott's failure to deny it should be deemed an admission.

as supervisors); *Guinup v. Petr-All Petroleum Corp.*, 2010 U.S. Dist. LEXIS 86280, at *22 (N.D.N.Y. Aug. 23, 2010) (and cases cited therein) (where store would not have operated successfully unless plaintiff performed her managerial functions, management was her primary duty despite her contention that 80% of her time was spent on ministerial tasks).

### 3. Supervision of Scott does not Negate the Exemption

Scott further attempts to minimize her executive status by arguing that she was under constant supervision. (Opp. pg. 14, 17.) But there is no suggestion in the record that Scott's discretion or supervisory authority was substantially limited by either her supervisors or any corporate policies. Nor is there authority in the record indicating that Scott's supervisors were regularly present at Scott's unit as she suggests in her brief.

Scott testified at her deposition that the Operations Manager and General Manager had an "open door," and that if she needed to speak with them, she could. (Scott Dep. at 66.) Yet, Scott now argues that she had little freedom from direct supervision because the Operations Manager spent 80% of his time walking through the units. (Opp. Br. 14, 17-18.) Scott conspicuously fails to clarify that the Operations Manager spent this time visiting between fourteen and eighteen units in two separate airport terminals. (Kobrynich Dep. at 16-17.) While the Operations Manager may have been available to Scott as needed throughout the day, as a good manager should be, that "is in no sense the exercise of supervision." *Donovan v. Burger King Corp.*, 675 F.2d 516, 522 (2d Cir. 1982). The Operations Manager was physically present for only a small percentage of Scott's day and unable to provide the constant supervision that Scott now argues she received.[9]

---

[9] Assuming that the Operations Manager worked for ten hours per day, eight hours of that time would have been spent visiting units. Ignoring the substantial walking time required for this task, the Operations Manager still would have spent only approximately twenty-five to thirty-five minutes per day at each unit.

Scott also claims that corporate policies and procedures dictated virtually every aspect of her job, without reference to any specific, limiting policy or procedure in the record. (Opp. Br. 18.)[10] To the extent such corporate policies and procedures existed, it was Scott's job, as manager, to train her employees on the applicable standards and ensure employees' compliance therewith. (Scott Dep. at 82, 168-69.)

Regardless, the presence of a hierarchical structure does not negate the supervisory nature of work performed by Scott. *Mullins v. City of New York*, 523 F. Supp. 2d 339, 59 (S.D.N.Y. 2007). The executive exemption is not lost simply because one manager is supervised by and reports to another, and must operate in line with the Company's policies and procedures. *See, e.g.*, *Buechler v. Davco Restaurants, Inc.*, 2009 U.S. Dist. LEXIS 106607, at *18 (D. Md. Nov. 16, 2009) (assistant managers may be relatively free from supervision even if they need to obey corporate policy or follow the orders of their corporate superiors); *Jackson v. Advance Auto Parts*, 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005) (the fact that assistant managers had to adhere to certain guidelines or obtain store manager's approval did not diminish their discretionary powers). Like the plaintiffs in these cases where summary judgment was granted, Scott was the highest ranking manager at her units for the vast majority of time and was responsible for the successful operation thereof.

B.   **Scott Regularly Exercised Discretionary Power**

The undisputed facts further demonstrate that Scott regularly exercised discretionary powers in running her units. For example, Scott testified about the need for her to use discretion to vary from par levels in ordering based on business needs. (Scott Dep. at 157, 231.) Scott also

---

[10]The facts here are not similar to those in *Morgan v. Family Dollar Stores, Inc.*, in which the plaintiffs presented evidence that the store manual strictly proscribed their assigned management tasks, the district managers closely scrutinized them to ensure compliance with the manual and corporate directives, and even the tiniest of details were governed by manuals. 551 F.3d 1233, 1249, 1270 (11th Cir. 2008). There are no similar fact in this case.

used discretion in handling guest complaints, providing product samples, issuing discipline to hourly employees, and deciding when extenuating circumstances existed authorizing her to suspend employees without prior supervisory approval. (Scott Dep. at 102-04, 121-22, 127, 175, 209-10, 217, 219.) Scott similarly used her judgment to control labor costs and determine staffing needs based on flight schedules. (Scott Dep. at 133, 191.)[11] Scott decided what tasks to delegate to her assistant managers, and even instructed her assistant managers to use more of their own judgment, rather than just following Company forms. (Scott Dep. at 148, 156, 174.) When Scott's unit failed inspection the Company asked Scott to come up with an action plan to address the problems rather than dictate specific steps that Scott was required to take. (Scott Dep. at 78.) Based on Scott's own admissions, it is apparent that she regularly exercised discretionary power in managing her units.[12]

### C. Scott's Recommendations were Given Particular Weight

Lastly, Scott argues that she cannot be considered exempt because she did not have ultimate hiring or firing authority. The law does not require that a manager have final authority – only that the manager can effectively recommend changes in the employees' status. 29 C.F.R. 541.105 ("An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's

---

[11] Scott testified at her deposition that she was responsible for ensuring her units had adequate manpower and that it was her job to determine the staffing needs for her unit based on the flight schedules. (Scott Dep. at 191-93.) Yet, she denies these statements in her 56.1 Counterstatement. (56.1 CS ¶ 62). Like in this example, in her 56.1 Counterstatement Scott repeatedly denies a fact that she admitted at her deposition without citation to any contrary authority that actually supports the denial. In all such circumstances, Scott's denial should be disregarded. *Zakrzewska v. The New Sch.*, 2009 U.S. Dist. LEXIS 3868, at *2 n.5 (S.D.N.Y. Jan. 21, 2009).

[12] Scott argues that, in order to prevail, SSP must prove that she exercised discretion and independent judgment with respect to matters of significance in the performance of her primary duties, citing 29 C.F.R. 541.202(a). (Opp. Br. 19-20.) That requirement is part of the administrative exemption test and does *not* apply to the executive exemption test. Thus, § II.B.3 of Scott's brief should be disregarded.

change in status.") Scott does not dispute that she could make such recommendations. In fact, Scott admitted that she could recommend employees for promotion, and that she prepared the performance reviews that were used in compensation decisions. (56.1 C.S. ¶ 71-72; Scott Dep. at 162-63.) Scott also testified that she interviewed and hired at least one employee. (Scott Dep. at 9.) Two other employees recall being interviewed and hired by Scott. (Cineus Decl. ¶ 2; Acevedo Decl. ¶ 2.) Scott also admitted to initiating progressive discipline against employees that could ultimately lead to the termination of their employment. (Scott Dep. at 175; Exs. S, J.) As explained in SSP's moving papers, such authority is sufficient to satisfy this final prong of the executive exemption.

### III. CONCLUSION

Scott's own admissions and the supporting documentary evidence in the record establish, as a matter of law, that Scott was properly classified by SSP as a bona fide executive employee, exempt from the overtime requirements of the FLSA and New York Labor Law. Accordingly, SSP respectfully requests that the Court grant its motion for summary judgment and dismiss Scott's Complaint in its entirety.

Date: August 26, 2010  
New York, New York

/ Andrew P. Marks  
Andrew P. Marks (amarks@littler.com)  
Sara Danielle Sheinkin (ssheinkin@littler.com)  
LITTLER MENDELSON  
  A Professional Corporation  
900 Third Avenue  
New York, NY  10022.3298  
212.583.9600

Attorneys for Defendant